**UNITED STATES DISTRICT COURT**
**FOR THE DISTRICT OF COLUMBIA**

| | |
|---|---|
| QATAR NATIONAL BANK (QPSC), <br><br> Plaintiff, <br> v. <br><br> GOVERNMENT OF ERITREA, <br> STATE OF ERITREA, <br><br> Defendants. | No. 21-cv-00436-TFH |

**MOTION FOR ENTRY OF DEFAULT JUDGMENT**

Pursuant to Federal Rule of Civil Procedure 55(b)(2) and 28 U.S.C. § 1608(e), plaintiff Qatar National Bank (QPSC) ("QNB") moves for the entry of a default judgment against defendants Government of Eritrea and State of Eritrea.  This motion is supported by the accompanying memorandum of points and authorities, the supporting declarations of David O'Sullivan, Charles Patrick Spragge, and Robert K. Kry, and the exhibits attached thereto.  A proposed order granting the motion and proposed form of judgment are attached.

In this action, QNB seeks recognition and enforcement pursuant to the District of Columbia's Uniform Foreign-Country Money Judgments Recognition Act of 2011, D.C. Code §§ 15-361 to 15-371, of an English judgment that QNB previously obtained against the Government and State of Eritrea.  As the accompanying memorandum explains, this Court has subject-matter jurisdiction over this recognition action under 28 U.S.C. § 1330(a) because the Government and State of Eritrea waived their sovereign immunity in Section 11 of the Loan Agreement, either expressly or by implication.  The Court has personal jurisdiction and venue under 28 U.S.C. §§ 1330(b) and 1391(f)(4).  QNB properly served the Government and State of

Eritrea under 28 U.S.C. § 1608(a)(3) by causing the Clerk to mail the summonses, complaint, and other required documents to Eritrea's Minister of Foreign Affairs in Asmara.   Eritrea has nonetheless refused to appear or otherwise participate in this proceeding.

Finally, QNB has proven its entitlement to relief on the merits of its claim by satisfactory evidence as required by 28 U.S.C. § 1608(e).  The English judgment is subject to the District of Columbia's Uniform Foreign-Country Money Judgments Recognition Act because it is a final, conclusive, and enforceable judgment that grants recovery of a sum of money.   D.C. Code § 15-363(a).  No ground for denial of recognition exists.  *Id.* § 15-364(b)-(c).

The Court should accordingly grant QNB's motion and enter judgment against the Government and State of Eritrea in the form attached for US$295,265,758.48, plus additional prejudgment interest of US$55,558.52 per day for each day between August 6, 2021, and the date the Court enters judgment, plus post-judgment interest as provided by 28 U.S.C. § 1961.

Dated:   August 6, 2021
             Washington, D.C.

Respectfully submitted,

  /s/ Robert K. Kry
Robert K. Kry
D.C. Bar # 490545
Kenneth E. Notter III
D.C. Bar # 1708367
MOLOLAMKEN LLP
The Watergate, Suite 500
600 New Hampshire Avenue, N.W.
Washington, D.C.  20037
Tel.: (202) 556-2011
Fax: (202) 556-2001
rkry@mololamken.com

*Attorneys for Plaintiff*

# UNITED STATES DISTRICT COURT
## FOR THE DISTRICT OF COLUMBIA

QATAR NATIONAL BANK (QPSC),

                Plaintiff,

   v.

GOVERNMENT OF ERITREA,
STATE OF ERITREA,

              Defendants.

No. 21-cv-00436-TFH

## PLAINTIFF'S MEMORANDUM OF POINTS AND AUTHORITIES IN SUPPORT OF MOTION FOR ENTRY OF DEFAULT JUDGMENT

Robert K. Kry
D.C. Bar #490545
Kenneth E. Notter III
D.C. Bar #1708367
MOLOLAMKEN LLP
The Watergate, Suite 500
600 New Hampshire Avenue, N.W.
Washington, D.C.  20037
Tel.: (202) 556-2011
Fax: (202) 556-2001
rkry@mololamken.com

*Attorneys for Plaintiffs*

**TABLE OF CONTENTS**

Page

INTRODUCTION ........................................................................................................... 1

BACKGROUND ............................................................................................................. 1

I.      QNB Lends Eritrea Nearly $200 Million............................................................. 1

II.     QNB Obtains a Final Judgment Against Eritrea in the United Kingdom............ 3

III.    QNB Files This Action To Recognize and Enforce the English Judgment........ 4

ARGUMENT .................................................................................................................. 5

I.      The Court Has Subject-Matter Jurisdiction ...................................................... 6

        A.      Eritrea Explicitly Waived Its Sovereign Immunity in Section 11 of the
                Loan Agreement...................................................................................... 6

                1.      The Meaning of Section 11 Is a Question of U.K. Law ...............7

                2.      Section 11 Is an Explicit Waiver of Immunity Under U.K. Law ...............8

                3.      Section 11 Is an Explicit Waiver of Immunity Under U.S. Law ...............9

                4.      This Suit Is Within the Scope of the Waiver ...............11

        B.      Eritrea Waived Its Immunity by Implication ........................................ 13

II.     The Court Has Personal Jurisdiction and Venue ............................................ 15

III.    Eritrea Failed To Answer Despite Proper Service .......................................... 15

IV.     QNB Has Shown Its Entitlement To Recognition and Enforcement of the
        English Judgment by Satisfactory Evidence................................................... 17

        A.      The English Judgment Is Covered by the D.C. Recognition Act ........ 17

        B.      No Ground for Non-Recognition Exists ............................................... 18

        C.      QNB Is Entitled to Interest as Specified in the English Judgment ...... 21

CONCLUSION............................................................................................................. 22

# **TABLE OF AUTHORITIES**

Page(s)

## CASES

*Ackermann v. Levine*,
   788 F.2d 830 (2d Cir. 1986) .................................................................................. 19

\* *Azima v. RAK Inv. Auth.*,
   926 F.3d 870 (D.C. Cir. 2019) ........................................................................ 11, 12

*Barot v. Embassy of the Republic of Zambia*,
   785 F.3d 26 (D.C. Cir. 2015) ................................................................................ 15

*Bettis v. Islamic Republic of Iran*,
   315 F.3d 325 (D.C. Cir. 2003) .............................................................................. 15

*Cap. Ventures Int'l v. Republic of Argentina*,
   552 F.3d 289 (2d Cir. 2009) .............................................................................. 7, 11

\* *Comm'ns Imp. Exp. S.A. v. Republic of Congo*,
   757 F.3d 321 (D.C. Cir. 2014) .............................................................................. 12

*Comm'ns Imp. Exp. S.A. v. Republic of Congo*,
   118 F. Supp. 3d 220 (D.D.C. 2015) ................................................................ 18, 20

*Comm'ns Imp. Exp. S.A. v. Republic of Congo*,
   916 F. Supp. 2d 48 (D.D.C. 2013) ........................................................................ 12

*Compagnie Noga d'Importation et d'Exportation, S.A. v. Russian Federation*,
   361 F.3d 676 (2d Cir. 2004) .................................................................................. 15

*Cont'l Transfert Technique Ltd. v. Fed. Gov't of Nigeria*,
   603 F. App'x 1 (D.C. Cir. 2015) ........................................................................... 21

*Coregis Ins. Co. v. Am. Health Found., Inc.*,
   241 F.3d 123 (2d Cir. 2001) .................................................................................. 11

*Creighton Ltd. v. Gov't of State of Qatar*,
   181 F.3d 118 (D.C. Cir. 1999) .............................................................................. 13

*European Union v. Syrian Arab Republic*,
   [2018] EWHC 1712 (Comm.) .................................................................................. 8

*Gates v. Syrian Arab Republic*,
   646 F.3d 1 (D.C. Cir. 2011) .................................................................................. 16

\* *Gulf Res. Am., Inc. v. Republic of Congo*,
   370 F.3d 65 (D.C. Cir. 2004) ........................................................................ 6, 9, 11

*Han Kim v. Democratic People's Republic of Korea*,
  774 F.3d 1044 (D.C. Cir. 2014) ............................................................ 5

*Ingersoll Milling Mach. Co. v. Granger*,
  833 F.2d 680 (7th Cir. 1987) ............................................................ 21

* *Joseph v. Office of Consulate General of Nigeria*,
  830 F.2d 1018 (9th Cir. 1987) .................................................... 13, 14

*LLC SPC Stileks v. Republic of Moldova*,
  985 F.3d 871 (D.C. Cir. 2021) .......................................................... 21

*Milanovich v. Costa Crociere, S.p.A.*,
  954 F.2d 763 (D.C. Cir. 1992) ............................................................ 8

* *Mohammad Hilmi Nassif & Partners v. Republic of Iraq*,
  No. 17-cv-2193, Dkt. 72 (D.D.C. July 29, 2021) ........................ 9, 10, 12

*Moran v. Carey Limousine, Inc.*,
  737 A.2d 532 (D.C. 1999) ................................................................... 8

*Practical Concepts, Inc. v. Republic of Bolivia*,
  811 F.2d 1543 (D.C. Cir. 1987) ........................................................ 15

* *Princz v. Federal Republic of Germany*,
  26 F.3d 1166 (D.C. Cir. 1994) .......................................................... 13

* *Qatar National Bank (Q.P.S.C.) v. Gov't of Eritrea*,
  No. BL-2018-000751 (U.K.) .............................................................. 3

*Republic of Sudan v. Harrison*,
  139 S. Ct. 1048 (2019) ....................................................................... 5

*Roth v. Islamic Republic of Iran*,
  78 F. Supp. 3d 379 (D.D.C. 2015) ..................................................... 5

* *Seetransport Wiking Trader Schiffarhtsgesellschaft MBH & Co.,
  Kommanditgesellschaft v. Navimpex Centrala Navala*,
  989 F.2d 572 (2d Cir. 1993) ............................................................. 14

*Society of Lloyd's v. Ashenden*,
  233 F.3d 473 (7th Cir. 2000) ............................................................ 18

*Society of Lloyd's v. Siemon-Netto*,
  457 F.3d 94 (D.C. Cir. 2006) ............................................................ 18

* *Sokaogon Gaming Enter. Corp. v. Tushie-Montgomery Assocs., Inc.*,
  86 F.3d 656 (7th Cir. 1996) .............................................................. 10

*Tahan v. Hodgson*,
   662 F.2d 862 (D.C. Cir. 1981)..........................................................................19

*Vaughan v. Nationwide Mut. Ins. Co.*,
   702 A.2d 198 (D.C. 1997) .................................................................................7

\* *World Wide Minerals, Ltd. v. Republic of Kazakhstan*,
   296 F.3d 1154 (D.C. Cir. 2002)....................................................................6, 10

### STATUTES & RULES

28 U.S.C. § 1330(a)...................................................................................................6, 15

28 U.S.C. § 1330(b).......................................................................................................15

28 U.S.C. § 1391(f)(4) ...................................................................................................15

28 U.S.C. § 1604 .....................................................................................................10, 11

28 U.S.C. § 1605(a)(1) ...............................................................................................6, 13

28 U.S.C. § 1608(a) .......................................................................................................15

28 U.S.C. § 1608(a)(1) ...................................................................................................16

28 U.S.C. § 1608(a)(2) ...................................................................................................16

28 U.S.C. § 1608(a)(3) ...............................................................................................5, 16

28 U.S.C. § 1608(d) ...................................................................................................5, 16

28 U.S.C. § 1608(e)..............................................................................................1, 5, 17

28 U.S.C. § 1961 ......................................................................................................21, 22

D.C. Code § 15-363(a) ...................................................................................................17

D.C. Code § 15-363(b) ...................................................................................................17

D.C. Code § 15-364(a) ..............................................................................................18, 20

D.C. Code § 15-364(b)(1) ...............................................................................................18

D.C. Code § 15-364(b)(2) ...............................................................................................18

D.C. Code § 15-364(b)(3) ...............................................................................................19

D.C. Code § 15-364(c)(1) ...............................................................................................19

D.C. Code § 15-364(c)(2) ........................................................................................................19

D.C. Code § 15-364(c)(3) ........................................................................................................19

D.C. Code § 15-364(c)(4) ........................................................................................................20

D.C. Code § 15-364(c)(5) ........................................................................................................20

D.C. Code § 15-364(c)(6) ........................................................................................................20

D.C. Code § 15-364(c)(7) ........................................................................................................20

D.C. Code § 15-364(c)(8) ........................................................................................................20

D.C. Code § 15-365(a)(3) ........................................................................................................18

Fed. R. Civ. P. 55(a) ..................................................................................................................5

Fed. R. Civ. P. 55(b) ..................................................................................................................5

## OTHER AUTHORITIES

H.R. Rep. No. 94-1487 (1976) ..........................................................................................6, 13, 14

*Restatement (Second) of Conflict of Laws* § 187 (1971) .................................................................7

United Nations Convention on Jurisdictional Immunities of States and Their
   Property (2014) ...................................................................................................................9

Plaintiff Qatar National Bank (QPSC) ("QNB") respectfully submits this memorandum in support of its motion for entry of a default judgment against defendants Government of Eritrea and State of Eritrea (collectively "Eritrea").

## INTRODUCTION

This is an action under the District of Columbia's Uniform Foreign-Country Money Judgments Recognition Act of 2011, D.C. Code §§ 15-361 to 15-371.  QNB seeks to recognize and enforce a judgment it obtained in England against the Government and State of Eritrea.  In 2009 and 2010, QNB loaned Eritrea nearly $200 million.  Eritrea paid back only a small portion and ignored QNB's repeated demands to honor its commitments.  QNB therefore sued Eritrea in England and obtained a judgment for over $250 million.  But Eritrea still refuses to pay.

QNB filed this action to recognize and enforce the English judgment.  Despite being duly served, Eritrea refused to appear in these proceedings.  QNB therefore moves for the entry of a default judgment against Eritrea.  This Court has subject-matter jurisdiction because Eritrea waived its sovereign immunity in the underlying loan agreement.  The Court also has personal jurisdiction and venue.  Finally, QNB's motion establishes its entitlement to recognition of the English judgment by satisfactory evidence, as required to enter a default judgment against a foreign state.  28 U.S.C. § 1608(e).  The Court should grant QNB's motion and enter a default judgment against the Government and State of Eritrea in the form attached.

## BACKGROUND

### I.    QNB LENDS ERITREA NEARLY $200 MILLION

In March 2009, QNB agreed to lend the Government of Eritrea US$30 million pursuant to a Commercial Loan Agreement among Qatar National Bank, S.A.Q. (as QNB was then known), the Government of Eritrea – Ministry of Finance (as borrower), and the State of Eritrea (as guarantor) (the "Loan Agreement").  O'Sullivan Decl. ¶ 3 & Ex. A.  The Government of Eritrea

promised to repay the loan, plus all interest and expenses, in semi-annual installments.  *Id.* ¶ 4 & Ex. A § 4(a).  The same month, the State of Eritrea executed a written guarantee of the loan in favor of QNB (the "Guarantee").  *Id.* ¶ 5 & Ex. B.  The Guarantee stated that the State's obligation to pay would apply even if the parties increased the amount of the loan.  *Id.* Ex. B at 1.[1]

The next year, QNB, the Government of Eritrea, and the State of Eritrea entered into an addendum that increased the loan from US$30 million to US$200 million (the "Addendum"). O'Sullivan Decl. ¶¶ 7-8 & Ex. C § 3(a).  The Government agreed to repay the loan in eleven equal semi-annual installments.  *Id.* ¶ 8 & Ex. C § 9.  The State again guaranteed the Government's obligations.  *Id.* ¶ 8 & Ex. C § 11.

Section 11 of the Loan Agreement contains a United Kingdom choice of law clause as well as a provision submitting to the jurisdiction of "the courts of the United Kingdom or any other courts chosen by the Bank":

> This Agreement shall be governed by and construed in accordance with the applicable laws, regulations and procedures of the United Kingdom and that the courts of the United Kingdom or any other courts chosen by the Bank shall have jurisdiction to consider any dispute which may arise out of or in connection with this Agreement and Borrower waives his right to object to the jurisdiction of such courts.

O'Sullivan Decl. Ex. A § 11.

In total, QNB disbursed US$199.5 million to the Government of Eritrea pursuant to the Loan Agreement and Addendum.  O'Sullivan Decl. ¶ 9.  The Government repaid $19.8 million in principal in late 2011 and another $19.8 million in principal and $5.0 million in interest in May

---

[1] The Guarantee and Loan Agreement refer to the guarantor variously as the "State of Eritrea," the "Government of the State of Eritrea," and (confusingly) the "Government of Eritrea."  *See, e.g.*, O'Sullivan Decl. Ex. A at 1, 6; *id.* Ex. B at 1.  We follow the English judgment's naming convention throughout and refer to the borrower as the "Government of Eritrea" and the guarantor as the "State of Eritrea."  *See id.* Ex. D at 1 & ¶¶ 6, 133.

2012.  *Id.*  After May 2012, however, neither the Government nor the State made any further payments on the loan.  *Id.*

## II.    QNB OBTAINS A FINAL JUDGMENT AGAINST ERITREA IN THE UNITED KINGDOM

After Eritrea refused QNB's repeated written demands for payment, QNB filed a claim for repayment in the High Court of Justice, Business and Property Courts of England and Wales, in a case captioned *Qatar National Bank (Q.P.S.C.) v. Government of Eritrea et al.*, No. BL-2018-000751.  O'Sullivan Decl. ¶ 10.  The English court authorized QNB to serve the claim on the Eritrean Embassy.  O'Sullivan Decl. Ex. D ¶¶ 10-14.

QNB's efforts to serve Eritrea met extraordinary resistance.  On one occasion, the Embassy's staff physically assaulted QNB's representative to stop her from leaving the documents at the Embassy.  O'Sullivan Decl. Ex. D ¶ 92.  Another effort was thwarted when the Embassy receptionist locked the QNB representative in the Embassy until he agreed to take the documents with him when he left.  *Id.* ¶¶ 98-99.  A third attempt ended with the Embassy receptionist knocking the documents from the process server's hands and throwing them on the ground outside the Embassy's front door.  *Id.* ¶ 100.

Faced with that resistance, the English court dispensed with formal service under U.K. law. O'Sullivan Decl. Ex. D ¶ 122.  The court found that "the Eritrean Government [was] aware that the Claimant was seeking to commence court proceedings in this jurisdiction and that the Claimant had taken all reasonable steps to put the Defendants on notice of those proceedings."  *Id.* ¶ 117. The court noted that "[a]ll the court documents including the Claim Form were delivered to the Embassy in London on more than one occasion."  *Id.* ¶ 120.  The court also concluded that it had jurisdiction over the case, observing that Section 11 of the Loan Agreement provided that "the courts of the United Kingdom should have jurisdiction over any dispute arising under the loan agreement."  *Id.* ¶ 6.

Turning to the merits, the English court reviewed the evidence showing the existence of the Loan Agreement and Guarantee, the funds drawn down under those agreements, and the partial repayment of only a small portion of the loan.  O'Sullivan Decl. Ex. D ¶ 142.  The court also noted correspondence from 2017 in which Eritrea "acknowledge[d] the existence of the debt" and "[did] not identify any suggested defence to the demand for payment."  *Id.*  That evidence satisfied the court that there was "no real prospect of [Eritrea] successfully defending this claim."  *Id.* ¶ 145. The court therefore granted summary judgment to QNB.  *Id.*

On July 2, 2019, the English court issued an order giving effect to its judgment.  O'Sullivan Decl. ¶ 13 & Ex. E.  The order states:  "Final Judgment on the Claim is entered in favour of the Claimant and against the Defendants."  *Id.* Ex. E ¶ 3.  The order directs the Government and State of Eritrea to pay QNB US$253,388,350.08, reflecting the then-outstanding principal and interest, as well as £70,000 in costs.  *Id.* ¶¶ 4-5.

The English court ordered QNB to serve copies of the judgment and order on Eritrea and gave Eritrea two months from receipt to apply to vary or set aside the order.  O'Sullivan Decl. Ex. E ¶¶ 6-7.  QNB served the documents as ordered.  O'Sullivan Decl. ¶ 15 & Ex. F.  Two months passed without Eritrea making any such application.  *Id.* ¶ 15.

Since the English court issued its final judgment, neither the Government nor the State of Eritrea has paid any amount due to QNB.  O'Sullivan Decl. ¶ 17.  As of August 6, 2021, the total amount the Government and State of Eritrea owe to QNB under the English judgment, with interest, is US$295,265,758.48.  O'Sullivan Decl. ¶¶ 18-19 & Ex. G.

## III.   QNB FILES THIS ACTION TO RECOGNIZE AND ENFORCE THE ENGLISH JUDGMENT

On February 19, 2021, QNB filed this action under the District of Columbia's Uniform Foreign-Country Money Judgments Recognition Act of 2011, D.C. Code §§ 15-361 to 15-371, to recognize and enforce the English judgment.  Dkt. 1.  QNB caused the Court's Clerk to serve the

Government and State of Eritrea with the summonses, complaint, and notice of suit, pursuant to 28 U.S.C. § 1608(a)(3).  Kry Decl. ¶¶ 6-9.

Neither the Government nor the State of Eritrea filed an answer or other responsive pleading within the sixty days allowed by 28 U.S.C. § 1608(d).  On June 7, 2021, the Clerk filed a certificate of default.  Dkt. 11.  QNB then caused the Clerk to serve the certificate of default on the Government and State of Eritrea as well.  Kry Decl. ¶¶ 11-13.  Despite those steps, Eritrea still refuses to appear or otherwise respond to this action.

## ARGUMENT

The Court should enter a default judgment in favor of QNB recognizing and enforcing the English judgment.  Federal Rule of Civil Procedure 55(b) permits the Court to enter a default judgment where a defendant was duly served but "failed to plead or otherwise defend."  Fed. R. Civ. P. 55(a), (b)(2).  The Foreign Sovereign Immunities Act ("FSIA") likewise "authorize[s] the courts to enter default judgments against defendants who refuse to appear."  *Han Kim v. Democratic People's Republic of Korea*, 774 F.3d 1044, 1048 (D.C. Cir. 2014); *see also Republic of Sudan v. Harrison*, 139 S. Ct. 1048, 1054 (2019) (foreign state that fails to respond to lawsuit "runs the risk of incurring a default judgment").

The FSIA establishes special procedures for default judgments against foreign states.  "No judgment by default shall be entered . . . against a foreign state . . . unless the claimant establishes his claim or right to relief by evidence satisfactory to the court."  28 U.S.C. § 1608(e).  That standard "leaves it to the court to determine precisely how much and what kinds of evidence the plaintiff must provide."  *Han Kim*, 774 F.3d at 1047.  Courts, however, routinely find the standard met from fact or expert affidavits that make out the elements of the plaintiff's case.  *See, e.g.*, *id.* at 1051 (relying on "uncontroverted expert statements"); *Roth v. Islamic Republic of Iran*, 78 F. Supp. 3d 379, 386 (D.D.C. 2015) ("uncontroverted factual allegations that are supported by

affidavits").  QNB makes the necessary showing here, both for the jurisdictional prerequisites for this action and for the merits of its claim.

## I.  THE COURT HAS SUBJECT-MATTER JURISDICTION

The FSIA grants this Court subject-matter jurisdiction over "any nonjury civil action against a foreign state . . . as to any claim for relief in personam with respect to which the foreign state is not entitled to immunity."  28 U.S.C. § 1330(a).  In this case, the Court has jurisdiction under the FSIA's wavier exception.  That exception applies to any case in which "the foreign state has waived its immunity *either explicitly or by implication*."  28 U.S.C. § 1605(a)(1) (emphasis added).  Eritrea has done both those things here.

### A.   Eritrea Explicitly Waived Its Sovereign Immunity in Section 11 of the Loan Agreement

The FSIA's legislative history makes clear that "a foreign state may waive its immunity in a contract with a private party."  H.R. Rep. No. 94-1487, at 18 (1976).  Consistent with that principle, the D.C. Circuit has repeatedly found explicit waivers from contract provisions.  *See, e.g.*, *Gulf Res. Am., Inc. v. Republic of Congo*, 370 F.3d 65, 72-73 (D.C. Cir. 2004) (finding explicit waiver where state agreed not to "avail itself of . . . any other benefits or protections" of its sovereign status); *World Wide Minerals, Ltd. v. Republic of Kazakhstan*, 296 F.3d 1154, 1162 & n.13 (D.C. Cir. 2002) (finding explicit waiver from contract provision).  "In general, explicit waivers of sovereign immunity are narrowly construed 'in favor of the sovereign' and are not enlarged 'beyond what the language requires.' "  *World Wide Minerals*, 296 F.3d at 1162.  The provision must "clearly and unambiguously" waive immunity.  *Id.*  Section 11 of the Loan Agreement meets those standards here.

Section 11 provides:

> This Agreement shall be governed by and construed in accordance with the applicable laws, regulations and procedures of the United Kingdom and . . . the courts of the United Kingdom or **any other courts chosen by the Bank shall have jurisdiction to consider any dispute which may arise out of or in connection with this Agreement** and Borrower waives his right to object to the jurisdiction of such courts.

O'Sullivan Decl. Ex. A §11 (emphasis added).  That provision is an explicit waiver for two reasons.  ***First***, the meaning of the provision is a question of U.K. law, and under U.K. law the provision is a clear and unambiguous waiver of immunity.  ***Second***, even if U.S. law applied, the provision would still be a clear waiver of immunity.

### 1.    *The Meaning of Section 11 Is a Question of U.K. Law*

Whether Section 11 is a waiver of immunity depends on what the provision means.  That meaning, in turn, depends on what law the parties selected to govern interpretation of the provision.  Whether a foreign state has waived immunity is ultimately a question of U.S. law under the FSIA.  But where an asserted waiver rests on the meaning of a contract provision governed by foreign law, the Court cannot determine the provision's meaning without reference to that foreign law.  *See Cap. Ventures Int'l v. Republic of Argentina*, 552 F.3d 289, 294 & n.4 (2d Cir. 2009) (noting that contracts were "governed by German law" but relying on U.S. case law to interpret waiver provision because parties had "not presented [the court] with anything to suggest that German law would alter the essential analysis").

Under District of Columbia conflict-of-law principles, courts routinely respect contractual choice of law clauses.  For questions of interpretation, D.C. courts give essentially conclusive weight to such provisions.  *See, e.g.*, *Vaughan v. Nationwide Mut. Ins. Co.*, 702 A.2d 198, 200-01 (D.C. 1997) ("The law of the state chosen by the parties to govern their contractual rights and duties ***will be applied*** if the particular issue is one which the parties could have resolved by an explicit provision in the agreement directed to that issue." (quoting *Restatement (Second) of*

*Conflict of Laws* § 187 (1971)) (emphasis added)); *see also Moran v. Carey Limousine, Inc.*, 737 A.2d 532, 533 n.3 (D.C. 1999) ("the law of the state chosen by the parties to govern their contractual rights controls"); *cf. Milanovich v. Costa Crociere, S.p.A.*, 954 F.2d 763, 767 (D.C. Cir. 1992) ("Under American law, contractual choice-of-law provisions are usually honored.").

The Loan Agreement contains an express U.K. choice of law clause: "This Agreement shall be governed by and ***construed in accordance with*** the applicable laws, regulations and procedures of the United Kingdom . . . ." O'Sullivan Decl. Ex. A § 11 (emphasis added). That choice of law clause applies to Section 11's provision stating that "any other courts chosen by the Bank shall have jurisdiction to consider any dispute which may arise out of or in connection with this Agreement," just as it applies to the rest of the Agreement. *Id.* Accordingly, the Court should consult U.K. law to determine whether Section 11 is a clear waiver of immunity.

2.   *Section 11 Is an Explicit Waiver of Immunity Under U.K. Law*

QNB's expert Charles Spragge explains that "Section 11 constitutes . . . a waiver of immunity" under English law. Spragge Decl. ¶ 26. Mr. Spragge's opinion follows directly from the plain language of the U.K.'s State Immunity Act 1978. *Id.* Ex. B.

Section 2 of the State Immunity Act provides that "[a] State is not immune as respects proceedings in respect of which it has ***submitted to the jurisdiction*** of the courts of the United Kingdom," including by means of a "prior written agreement." Spragge Decl. Ex. B § 2(1)-(2) (emphasis added). As Mr. Spragge explains, under the "plain language" of that provision, a contractual submission to jurisdiction is an "***unambiguous waiver*** of sovereign immunity." Spragge Decl. ¶ 25 (emphasis added). There is no separate "express waiver" exception under the statute – English law treats the submission to jurisdiction itself as a waiver of immunity. *Id.*

English case law supports Mr. Spragge's opinion. In *European Union v. Syrian Arab Republic*, [2018] EWHC 1712 (Comm.), for example, the court held that, where a sovereign

8

"submitted to this jurisdiction by virtue of . . . [certain] Loan Agreements," that submission to jurisdiction "constitute[d] a waiver of immunity."  Spragge Decl. ¶¶ 27-30 & Ex. D ¶¶ 27-28.  The United Nations Convention on Jurisdictional Immunities of States and Their Property (2014) offers further support.  Spragge Decl. ¶¶ 18-19, 26(ii)(d) & Ex. C.  That Convention provides that a state "cannot invoke immunity from jurisdiction" if it "has expressly ***consented to the exercise of jurisdiction*** by the court" in a "written contract."  *Id.* Ex. C art. 7(1) (emphasis added).  Like the State Immunity Act, the Convention thus recognizes that a contractual consent to jurisdiction is a clear waiver of sovereign immunity.

Under those English law principles, Section 11 is an unambiguous waiver of sovereign immunity.  Eritrea agreed in that provision that "***any other courts chosen by the Bank shall have jurisdiction*** to consider any dispute" relating to the Loan Agreement.  O'Sullivan Decl. Ex. A § 11.  By submitting to the jurisdiction of whatever courts QNB might select, Eritrea waived its immunity as a matter of English law.

3.   *Section 11 Is an Explicit Waiver of Immunity Under U.S. Law*

Even if United States law governed the interpretation of Section 11, the result would be the same.  That provision reflects a clear intent to waive sovereign immunity from jurisdiction.

"[T]he FSIA does not require magic words like 'waiver' or 'immunity' to effect explicit waiver . . . ."  *Mohammad Hilmi Nassif & Partners v. Republic of Iraq*, No. 17-cv-2193, Dkt. 72 at 29 (D.D.C. July 29, 2021) (report and recommendation) (Kry Decl. Ex. C).  In *Gulf Resources*, for example, the D.C. Circuit found an explicit waiver even though the provision did not mention "immunity" at all and instead referred only to "benefits or protections" relating to the defendant's sovereign status.  370 F.3d at 72-73 (state agreed not to "avail itself of . . . any other benefits or protections . . . connected with [its] status as a sovereign state").

In *Mohammad Hilmi Nassif*, the court found an explicit waiver where the defendants stated "that Defendants can be sued anywhere, that Defendants would have no defense to any such lawsuit, and that Defendants would not object to being sued anywhere."  No. 17-cv-2193, Dkt. 72 at 29-30 (Kry Decl. Ex. C) (emphasis omitted).  "[T]he fact that the statements . . . did not include the words 'waiver' or 'immunity,'" the court explained, "is not fatal."  *Id.* at 29.  "[T]he speakers' intentions are clear – Defendants may be sued anywhere, and [they] would have no defense or objection to such suit, regardless of the country in which suit is brought."  *Id.* at 30.

In *Sokaogon Gaming Enterprise Corp. v. Tushie-Montgomery Associates, Inc.*, 86 F.3d 656 (7th Cir. 1996), the Seventh Circuit found an explicit waiver of tribal immunity from an arbitration clause stating that disputes "shall be subject to and decided by arbitration" and that "judgment may be entered upon [the award] . . . in any court having jurisdiction thereof."  *Id.* at 659.  The court explained:  "There is nothing ambiguous about this language. . . .  To agree to be sued is to waive any immunity one might have from being sued."  *Id.*  "No case has ever held" that "a waiver of sovereign immunity, to be deemed explicit, must use the words 'sovereign immunity.'"  *Id.* at 660; *see also id.* (explaining that same principles apply to federal government sovereign immunity); *World Wide Minerals*, 296 F.3d at 1162 n.12 (relying on tribal immunity precedents to interpret the FSIA).

Section 11 is an explicit waiver of immunity for the same reason.  It states that "any other courts chosen by the Bank ***shall have jurisdiction*** to consider any dispute which may arise out of or in connection with this Agreement."  O'Sullivan Decl. Ex. A § 11 (emphasis added).  That language expressly negates whatever immunity from jurisdiction Eritrea would otherwise have under the FSIA.  *See* 28 U.S.C. § 1604 (foreign states "shall be immune from the jurisdiction of the courts of the United States").  As in *Sokaogon*, "[t]o agree to be sued is to waive any immunity

10

one might have from being sued." 86 F.3d at 659. To dispel any doubt, moreover, Section 11

adds that the Government of Eritrea "***waives [its] right to object*** to the jurisdiction of such courts."

O'Sullivan Decl. Ex. A § 11 (emphasis added). One objection the Government "waive[d]" was its

"immun[ity] from the jurisdiction of the courts of the United States." 28 U.S.C. §1604.[2]

### 4. *This Suit Is Within the Scope of the Waiver*

This judgment recognition action falls within the scope of Eritrea's waiver of immunity.

Section 11 waives immunity over any "dispute which may ***arise out of or in connection with*** this

Agreement." O'Sullivan Decl. Ex. A § 11 (emphasis added). The phrase "in connection with" is

"equivalent to 'in relation to,' which is quite broad." *Azima v. RAK Inv. Auth.*, 926 F.3d 870, 877

(D.C. Cir. 2019). "[A] dispute 'arises . . . in relation to' an agreement if the origin of the dispute

is related to that agreement, meaning it has some 'logical or causal connection' to the agreement."

*Id.* (quotation marks omitted); *see also Coregis Ins. Co. v. Am. Health Found., Inc.*, 241 F.3d 123,

128-29 (2d Cir. 2001) (phrases like "in connection with" are "typically defined more broadly").

This dispute clearly meets that standard. The English court entered judgment on unpaid

debts under the Loan Agreement, and QNB is now seeking recognition and enforcement of that

English judgment. Although this action is perhaps one step removed from the Loan Agreement

given that QNB is enforcing a judgment on the agreement rather than the agreement itself, the fact

---

[2] Section 11 is not precluded from being an explicit waiver just because it does not mention the
United States by name. Eritrea waived its immunity in "the courts of the United Kingdom or ***any
other courts*** chosen by the Bank." O'Sullivan Decl. Ex. A § 11 (emphasis added). In *Gulf
Resources*, the D.C. Circuit found a waiver even though the provision did not refer to a specific
country. 370 F.3d at 74. The court read the reference to "any country" as evidence of the
provision's "broader scope." *Id.*; *see also Cap. Ventures*, 552 F.3d at 295-96 (interpreting waiver
of immunity in "*any* court" as an explicit waiver of immunity to suit in the United States even
though the provision also mentioned "specific, non-United States jurisdictions").

remains that the "origin of the dispute" is still "related to that agreement," and the suit still has a "logical or causal connection" to the agreement. *Azima*, 926 F.3d at 877.

In *Commissions Import Export S.A. v. Republic of Congo*, 757 F.3d 321 (D.C. Cir. 2014), the D.C. Circuit held that it had jurisdiction over a judgment recognition action "in view of the [defendant's] waiver of any claim of sovereign immunity in the commitment letters" underlying the dispute. *Id.* at 325. Those waivers stated that they applied to any "dispute ***relating to*** the undertakings" in the letters. *Comm'ns Imp. Exp. S.A. v. Republic of Congo*, 916 F. Supp. 2d 48, 51 (D.D.C. 2013) (emphasis added), *rev'd on other grounds*, 757 F.3d 321 (D.C. Cir. 2014). *Commissions Import Export* thus establishes that a waiver of immunity for claims "relating to" a contract includes claims for recognition of a judgment based on that contract.

Similarly, in *Mohammad Hilmi Nassif*, the court rejected the argument that a waiver of immunity relating to a commitment letter did not extend to an action to recognize a judgment on the letter. No. 17-cv-2193, Dkt. 72 at 32-33 (Kry Decl. Ex. C). "The Jordanian judgment is a court order enforcing Plaintiff's rights under the Letter and setting the monetary amount owed to Plaintiff under the Letter. Thus, proceedings seeking recognition of that judgment are fairly considered suits seeking to enforce Plaintiff's rights under the Letter and collect the debt owed to Plaintiff under the Letter; that is, the proceedings for which Defendants explicitly waived sovereign immunity." *Id.* at 33.

The same reasoning applies here. QNB's action to enforce the English judgment on the Loan Agreement is closely related to the Loan Agreement itself. This action therefore "arise[s] out of or in connection with" the Loan Agreement and is within the scope of the waiver of immunity. O'Sullivan Decl. Ex. A § 11.

### B.       Eritrea Waived Its Immunity by Implication

At a minimum, Eritrea waived its immunity "by implication."  28 U.S.C. § 1605(a)(1).
"[A]n implied waiver depends upon the foreign government's having at some point indicated its
amenability to suit."  *Princz v. Federal Republic of Germany*, 26 F.3d 1166, 1174 (D.C. Cir. 1994).
The FSIA's legislative history gives three illustrative examples: "where a foreign state has filed a
responsive pleading in an action without raising the defense of sovereign immunity," "where a
foreign state has agreed to arbitration in another country," and "where a foreign state has agreed
that the law of a particular country should govern a contract."  H.R. Rep. No. 94-1487, at 18.
"[C]ourts have been reluctant to stray beyond these examples when considering claims that a
nation has implicitly waived its defense of sovereign immunity."  *Princz*, 26 F.3d at 1174; *see also*
*Creighton Ltd. v. Gov't of State of Qatar*, 181 F.3d 118, 122 (D.C. Cir. 1999) ("implied waiver
provision" is "constru[ed] . . . narrowly").  Even so, Eritrea's intent to indicate its amenability to
suit is beyond dispute here.

Eritrea agreed in Section 11 that "the courts of the United Kingdom ***or any other courts***
chosen by the Bank ***shall have jurisdiction to consider any dispute*** which may arise out of or in
connection with this Agreement."  O'Sullivan Decl. Ex. A § 11 (emphasis added).  The clear
implication is that Eritrea would not assert immunity from jurisdiction to prevent those courts from
adjudicating the very disputes Eritrea agreed they could hear.  It would make no sense to agree
that courts would have jurisdiction to hear a dispute but, at the same time, reserve the right to deny
the court's jurisdiction on the basis of sovereign immunity.  Section 11's clear implication (indeed,
its explicit meaning) is that Eritrea agreed to resolve disputes in the forums specified.

The Ninth Circuit found an implied waiver from far more equivocal language in *Joseph v.*
*Office of Consulate General of Nigeria*, 830 F.2d 1018 (9th Cir. 1987).  In that case, a lease
agreement stated that, "[i]n the event that any action shall be commenced by either party . . . in

addition to all other relief at law or equity, the prevailing party shall be entitled to recover attorney's fees as fixed by the court." *Id.* at 1022. The court "conclude[d] that this provision constitutes a waiver of sovereign immunity." *Id.* "Because the lease at issue provides for adjudication of . . . disputes in court, we conclude that the lease contemplates participation of the United States courts," and therefore "the waiver exception is applicable." *Id.* at 1023. That reasoning applies *a fortiori* to Eritrea's submission to jurisdiction here.

Section 11 is at least as clear as the three examples of implied waivers in the legislative history. One of those examples is "where a foreign state has agreed to arbitration in another country." H.R. Rep. No. 94-1487, at 18. If a foreign state implicitly waives immunity from arbitral proceedings by submitting to arbitration, the state must also implicitly waive immunity from judicial proceedings by submitting to court proceedings. There is no logical basis for distinguishing the two. Moreover, a submission to jurisdiction is a far clearer waiver than the legislative history's third example: "where a foreign state has agreed that the law of a particular country should govern a contract." *Id.*

Eritrea's implied waiver extends to this judgment recognition proceeding. In *Seetransport Wiking Trader Schiffarhtsgesellschaft MBH & Co., Kommanditgesellschaft v. Navimpex Centrala Navala*, 989 F.2d 572 (2d Cir. 1993), the Second Circuit held that a foreign sovereign's implied waiver of immunity from enforcement of an arbitral award also extended to an action to recognize a foreign judgment based on that arbitral award. *Id.* at 582-83. The court explained that "the cause of action to enforce the foreign judgment is within the scope of Navimpex's implicit waiver of sovereign immunity . . . because the cause of action is so closely related to the claim for enforcement of the arbitral award." *Id.* The same reasoning applies here.

For those reasons, if Section 11 is not an explicit waiver of immunity, it is at least an implied waiver. This Court therefore has subject-matter jurisdiction.

## II.   THE COURT HAS PERSONAL JURISDICTION AND VENUE

Under the FSIA, "[p]ersonal jurisdiction over a foreign state shall exist as to every claim for relief over which the district courts have jurisdiction under [section 1330(a)] where service has been made under section 1608." 28 U.S.C. § 1330(b). In other words, "subject matter jurisdiction plus service of process equals personal jurisdiction." *Practical Concepts, Inc. v. Republic of Bolivia*, 811 F.2d 1543, 1548-49 n.11 (D.C. Cir. 1987). This Court has subject-matter jurisdiction for the reasons above. *See* pp. 6-14, *supra*. And QNB properly served Eritrea for the reasons below. *See* pp. 15-16, *infra*. The Court therefore has personal jurisdiction.

As for venue, the FSIA states that an action may be brought "in the United States District Court for the District of Columbia if the action is brought against a foreign state." 28 U.S.C. § 1391(f)(4). Congress thus designated this Court as "the dedicated venue for actions against foreign states." *Bettis v. Islamic Republic of Iran*, 315 F.3d 325, 332 (D.C. Cir. 2003). The Government and State of Eritrea are both clearly "foreign states." *See, e.g.*, *Compagnie Noga d'Importation et d'Exportation, S.A. v. Russian Federation*, 361 F.3d 676, 683-90 (2d Cir. 2004) (holding that the Government of Russia was a political organ of the Russian state and not a separate instrumentality). This Court is therefore a proper venue.

## III.   ERITREA FAILED TO ANSWER DESPITE PROPER SERVICE

QNB properly served Eritrea in this action. "In order to sue a foreign state or one of its political subdivisions, a plaintiff must effect service in compliance with the Foreign Sovereign Immunities Act." *Barot v. Embassy of the Republic of Zambia*, 785 F.3d 26, 27 (D.C. Cir. 2015) (citing 28 U.S.C. § 1608(a)). "The Act provides four methods of service in descending order of preference." *Id.* The first two are a "special arrangement for service between the plaintiff and the

foreign state" and "an applicable international convention on service of judicial documents."  28 U.S.C. § 1608(a)(1)-(2).  Neither method is available here because QNB does not have any special service arrangement with Eritrea, and Eritrea is not a party to the Hauge Service Convention or any similar service treaty.  Kry Decl. ¶¶ 4-5.

QNB therefore served Eritrea under Section 1608(a)(3).  That provision requires the plaintiff to "send[ ] a copy of the summons and complaint and a notice of suit, together with a translation of each into the official language of the foreign state, by any form of mail requiring a signed receipt, to be addressed and dispatched by the clerk of the court to the head of the ministry of foreign affairs of the foreign state concerned."  28 U.S.C. § 1608(a)(3).  QNB followed that method here, submitting all the required materials to the Clerk on March 12, 2021.  Kry Decl. ¶ 7 & Ex. A.  On March 16, 2021, the Clerk certified that the documents had been dispatched to Eritrea.  Dkt. 6.  Finally, on March 29, 2021, DHL confirmed that the documents were delivered that same day.  Kry Decl. ¶ 9 & Ex. B.  The signed DHL delivery confirmations are sufficient to establish service on the Ministry.  *See Gates v. Syrian Arab Republic*, 646 F.3d 1, 4-5 (D.C. Cir. 2011) (finding effective service under Section 1608(a)(3) from DHL delivery confirmations).

Once DHL delivered the documents on March 29, 2021, Eritrea had sixty days to answer or otherwise respond to the complaint.  28 U.S.C. § 1608(d).  More than sixty days passed without any response.  Kry Decl. ¶ 10.  On June 7, 2021, the Clerk filed a certificate declaring the Government and State of Eritrea in default.  Dkt. 11.  QNB then caused the Clerk to serve the certificate of default on Eritrea as well, which was delivered on June 28, 2021.  Kry Decl. ¶ 12.  Eritrea nonetheless continues to refuse to appear or otherwise respond to this action.  *Id.* ¶ 13.

Those facts make clear that Eritrea has had ample notice of this action in precisely the manner the FSIA requires.  Eritrea is willfully ignoring the action and refusing to participate.

## IV.    QNB HAS SHOWN ITS ENTITLEMENT TO RECOGNITION AND ENFORCEMENT OF THE ENGLISH JUDGMENT BY SATISFACTORY EVIDENCE

Finally, QNB's submission "establishes [its] claim or right to relief by evidence satisfactory to the court."  28 U.S.C. § 1608(e).  QNB's complaint contains only one count, for recognition and enforcement of the English judgment under the District of Columbia's Uniform Foreign-Country Money Judgments Recognition Act of 2011 ("D.C. Recognition Act"), D.C. Code §§ 15-361 to 15-371.  Dkt. 1 ¶¶ 40-49.  QNB satisfies all the requirements of that statute.

### A.    The English Judgment Is Covered by the D.C. Recognition Act

The D.C. Recognition Act applies to any "foreign-country judgment" that "[g]rants or denies recovery of a sum of money" and is "[f]inal," "[c]onclusive," and "[e]nforceable" "[u]nder the law of the foreign country where rendered."  D.C. Code § 15-363(a).  The English judgment plainly "[g]rants . . . recovery of a sum of money."  O'Sullivan Decl. Ex. E ¶¶ 4-5 ("The Defendants shall pay the Claimant the sum of US$253,388,350.08" plus "costs . . . in the sum of £70,000," both "with interest accruing thereafter at the Judgment Rate of 8% per annum.").  The judgment also states on its face that it is a "Final Judgment on the Claim . . . in favour of the Claimant and against the Defendants."  *Id.* ¶ 3.  The English court gave Eritrea two months from notice of the judgment to apply to vary or set aside the judgment.  *Id.* ¶ 7.  That period passed without Eritrea making any application.  O'Sullivan Decl. ¶ 15.  QNB's U.K. legal expert confirms that the judgment is final, conclusive, and enforceable under U.K. law.  Spragge Decl. ¶ 34.

The D.C. Recognition Act excludes judgments for "taxes," a "[f]ine or other penalty," or "domestic relations" matters.  D.C. Code § 15-363(b).  QNB's judgment does not concern any of those subject matters.  It is a judgment on a commercial Loan Agreement and Guarantee.  O'Sullivan Decl. Ex. D.

### B.       No Ground for Non-Recognition Exists

Where the threshold requirements of the D.C. Recognition Act are met, "a court of the District of Columbia *shall recognize* a foreign-country judgment to which this subchapter applies" unless a statutory ground for non-recognition exists.  D.C. Code § 15-364(a) (emphasis added); *see also Comm'ns Imp. Exp. S.A. v. Republic of Congo*, 118 F. Supp. 3d 220, 224 (D.D.C. 2015) ("The D.C. Recognition Act *requires* a court of the District of Columbia to recognize a foreign country judgment to which the Act applies, unless a statutorily defined exception covers the judgment at issue." (emphasis added)).  The Act sets forth three mandatory grounds for non-recognition and eight discretionary ones.  D.C. Code § 15-364(b)-(c).  With respect to all eleven, "[the] party *resisting* recognition of a foreign-country judgment has the burden of establishing that a ground for nonrecognition . . . exists."  *Id.* § 15-364(d) (emphasis added).  QNB has no burden to prove the non-existence of *any* of those affirmative defenses, even on a motion for default judgment.

In any event, none of the grounds for non-recognition exists.

*First*, the English judgment was not "rendered under a judicial system that does not provide impartial tribunals or procedures compatible with the requirements of due process of law."  D.C. Code § 15-364(b)(1).  "Any suggestion that the English system of courts does not provide impartial tribunals or procedures compatible with the requirements of due process of law borders on the risible."  *Society of Lloyd's v. Siemon-Netto*, 457 F.3d 94, 105 n.12 (D.C. Cir. 2006) (quoting *Society of Lloyd's v. Ashenden*, 233 F.3d 473, 476 (7th Cir. 2000)) (alterations omitted).

*Second*, the English court did not lack "personal jurisdiction over the defendant[s]."  D.C. Code § 15-364(b)(2).  Under the D.C. Recognition Act, a judgment "may not be refused recognition for lack of personal jurisdiction if the . . . [d]efendant, before the commencement of the proceeding, had agreed to submit to the jurisdiction of the foreign court with respect to the subject matter involved."  D.C. Code § 15-365(a)(3).  The Government and State of Eritrea both

18

consented to the jurisdiction of the U.K. courts in Section 11 of the Loan Agreement. O'Sullivan Decl. Ex. A § 11 (agreeing that "the courts of the United Kingdom . . . shall have jurisdiction to consider any dispute which may arise out of or in connection with this Agreement").

*Third*, the English court did not lack "jurisdiction over the subject matter." D.C. Code § 15-364(b)(3). Under U.K. law, the High Court of Justice, Business and Property Courts, had subject-matter jurisdiction to consider a commercial dispute over a loan agreement and guarantee like this one. Spragge Decl. ¶ 32.

*Fourth*, this is not a case where the defendant "did not receive notice of the proceeding in sufficient time to enable the defendant to defend." D.C. Code § 15-364(c)(1). As the English court noted, "[a]ll the court documents including the Claim Form were delivered to the Embassy in London on more than one occasion." O'Sullivan Decl. Ex. D ¶ 120. As a result, "the Eritrean Government [was] aware that the Claimant was seeking to commence court proceedings in this jurisdiction." *Id.* ¶ 117.

*Fifth*, the English judgment was not "obtained by fraud that deprived the losing party of an adequate opportunity to present its case." D.C. Code § 15-364(c)(2). Eritrea had ample opportunity to participate in the English proceedings but willfully refused to do so. O'Sullivan Decl. Ex. D ¶¶ 117, 120.

*Sixth*, QNB's cause of action is not "repugnant to the public policy of the District of Columbia or of the United States." D.C. Code § 15-364(c)(3). The public policy exception applies only where a foreign judgment is "repugnant to fundamental notions of what is decent and just in the State where enforcement is sought." *Tahan v. Hodgson*, 662 F.2d 862, 864 (D.C. Cir. 1981); *see also Ackermann v. Levine*, 788 F.2d 830, 841 (2d Cir. 1986) (standard is "high, and infrequently met"). Where a foreign sovereign borrows money from a bank, there is no public

policy against requiring the sovereign to pay back those funds according to the terms of the loan. *Cf. Comm'ns Import Export*, 118 F. Supp. 3d at 228-29 (enforcement of arbitral award against foreign sovereign was not repugnant to D.C. public policy).

   **Seventh**, the English judgment does not "conflict[] with another final and conclusive judgment."  D.C. Code § 15-364(c)(4); *see* O'Sullivan Decl. ¶ 16.

   **Eighth**, the English proceedings were not "contrary to an agreement between the parties under which the dispute in question was to be determined otherwise than by proceedings in that foreign court."  D.C. Code § 15-364(c)(5).  To the contrary, Section 11 of the Loan Agreement expressly contemplated suits in U.K. courts.  O'Sullivan Decl. Ex. A § 11.

   **Ninth**, the English court's jurisdiction was not "based only on personal service," nor was London "a seriously inconvenient forum for the trial of the action."  D.C. Code § 15-364(c)(6).

   **Tenth**, the English judgment was not "rendered in circumstances that raise substantial doubt about the integrity of the rendering court."  D.C. Code § 15-364(c)(7).  The English court took evidence, heard argument, allowed Eritrea more than sufficient time to respond, and rendered a lengthy judgment explaining its reasoning.  O'Sullivan Decl. Ex. D.

   **Finally**, the English proceedings were not "[in]compatible with the requirements of due process of law."  D.C. Code § 15-364(c)(8).  Again, Eritrea had ample notice of the proceedings and simply chose not to participate.  O'Sullivan Decl. Ex. D ¶¶ 117, 120.  The English court entered judgment on the Loan Agreement and Guarantee only after undertaking its own independent review of the documentary evidence.  *Id.* ¶¶ 142-145.

   Because no exception to recognition applies, the D.C. Recognition Act requires the Court to recognize the English judgment.  D.C. Code § 15-364(a).

### C.     QNB Is Entitled to Interest as Specified in the English Judgment

The Court should enter judgment in the amount of the English judgment, including interest as specified in the English judgment through the date of this Court's judgment.

"[P]rejudgment interest is an element of complete compensation" under United States law. *LLC SPC Stileks v. Republic of Moldova*, 985 F.3d 871, 881 (D.C. Cir. 2021). The D.C. Circuit has thus held that, where an arbitral award prescribes interest on the award, a court enforcing the award must grant post-award, prejudgment interest at the rate specified in the award. *See id.* (holding that the "decision to award prejudgment interest 'must be exercised in a manner consistent with the underlying arbitration award'"). The same logic applies to recognition of a foreign judgment that prescribes its own interest rate. *See Ingersoll Milling Mach. Co. v. Granger*, 833 F.2d 680, 691 (7th Cir. 1987) (awarding prejudgment interest as specified in foreign judgment).[3]

The Court should therefore award interest at the 8% rate set in the English judgment, from the date specified in that judgment through the date of this Court's judgment. O'Sullivan Decl. Ex. E ¶¶4-5. The Court should also convert the cost portion of the English judgment from British pounds to U.S. dollars. *See Cont'l Transfer Technique Ltd. v. Fed. Gov't of Nigeria*, 603 F. App'x 1, 4 (D.C. Cir. 2015). A chart showing the interest and exchange rate calculations is included with this motion. O'Sullivan Decl. ¶¶18-19 & Ex. G.

---

[3] Once this Court enters judgment, interest will start accruing at the federal post-judgment interest rate instead. 28 U.S.C. § 1961.

## **CONCLUSION**

The Court should grant QNB's motion and enter judgment against the Government and State of Eritrea, jointly and severally, for US$295,265,758.48, plus additional prejudgment interest in the amount of US$55,558.52 per day for each day between August 6, 2021, and the date the Court enters judgment, plus post-judgment interest at the rate set by 28 U.S.C. § 1961.  A proposed order and proposed form of judgment are attached.

Dated:   August 6, 2021
         Washington, D.C.

Respectfully submitted,


  /s/ Robert K. Kry
Robert K. Kry
D.C. Bar # 490545
Kenneth E. Notter III
D.C. Bar # 1708367
MOLOLAMKEN LLP
The Watergate, Suite 500
600 New Hampshire Avenue, N.W.
Washington, D.C.  20037
Tel.: (202) 556-2011
Fax: (202) 556-2001
rkry@mololamken.com

*Attorneys for Plaintiff*

**<u>CERTIFICATE OF SERVICE</u>**

I certify that on August 6, 2021, this motion and the accompanying memorandum of points

and authorities, as well as all supporting declarations and exhibits, were served on the Government

of Eritrea and the State of Eritrea by DHL to the following:

       Hon. Osman Saleh Mohammed
       Minister of Foreign Affairs
       Ministry of Foreign Affairs
       P.O. Box 190
       Asmara, Eritrea

                                                       <u>  /s/ Robert K. Kry   </u>
                                                             Robert K. Kry