UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF COLUMBIA

| | |
|---|---|
| QATAR NATIONAL BANK,<br><br>*Plaintiff*,<br><br>v.<br><br>GOVERNMENT OF ERITREA *et al.*,<br><br>*Defendants*. | No. 21-cv-436-ACR-MAU |

### REPORT AND RECOMMENDATION

Plaintiff Qatar National Bank ("Bank") seeks to enforce a judgment it obtained in the United Kingdom against Defendants Government of Eritrea and State of Eritrea (together, "Eritrea") pursuant to the Foreign Sovereign Immunities Act ("FSIA"), 28 U.S.C. §§ 1602–11. ECF No. 1. Eritrea has yet to appear or otherwise defend itself. Before the Court is the Bank's Motion for Entry of Default Judgment ("Motion"). ECF No. 17. Because the Bank has failed to show that Eritrea waived sovereign immunity, the Court recommends that the Bank's Motion be **DENIED WITHOUT PREJUDICE**.

### BACKGROUND

In March 2009, the Bank and Eritrea entered into a commercial loan agreement in which the Bank lent Eritrea $30 million. *See* Decl. of David O'Sullivan, ECF No. 17-1 ¶ 3; *see also* ECF No. 17-2 (Commercial Loan Agreement with certified translation). Ali Ibrahim Ahmad ("Ahmad"), Eritrea's Ambassador to Qatar, signed the agreement on behalf of the borrower, the Ministry of Finance of the Government of Eritrea ("Government"), and the guarantor, the State of

1

Eritrea ("State").[1]  ECF No. 17-2 at 2, 8.[2]  The agreement states that Ahmad represented the Government and the State in the transaction:

> Represented by:
> Mr. Ali Ibrahim Ahmad
> Ambassador of the State of Eretria [sic] to the State of Qatar
> According to the authorization signed by the President of the State
> of Eritrea on March 10th, 2009

*Id.* at 8.[3]

The Government agreed to repay the loan in annual installments, with payments beginning thirty-six months after the Parties executed the agreement. *Id.* at 5, § 4(a). As guarantor, the State committed to pay installments from its tax and gold mine revenue. ECF No. 17-3. It also agreed to be jointly and severally liable with the Government. ECF No. 17-2 at 6, § 5. In case of any disputes, the Parties agreed to a choice of law and forum selection clause ("Section 11"):

> This Agreement shall be governed by and construed in accordance with the applicable laws, regulations and procedures of the United Kingdom and that the courts of the United Kingdom or any other courts chosen by the Bank shall have jurisdiction to consider any dispute which may arise out of or in connection with this Agreement and Borrower waives his right to object to the jurisdiction of such courts.

*Id.* at 7, § 11.

In February 2010, the Parties entered into a Loan Agreement Addendum. *See* ECF Nos. 17-1 ¶ 8; 17-4 (Loan Agreement Addendum with certified translation). Ahmad again signed the

---

[1] Although the loan document refers to the Ministry of Finance, the Bank and the English court name the Government of Eritrea as the borrower. ECF Nos. 1 ¶ 13; 17-5 at 2. Further, the loan documents contain inconsistent names for the guarantor. ECF No. 17-1 ¶ 3 n.1; *see* ECF Nos. 17-2 at 2, 8; 17-3 at 2. The confusion stems from the translations of the loan documents. For consistency, the Court follows the Bank and English court's terminology and assumes that the relevant defendant entities are the Government and the State.
[2] Citations reference page numbers in ECF headers.
[3] The agreement's language with respect to the State contains a slight variation: "According to the authorization signed by the Eritrean President on March 10th, 2009 AD." ECF No. 17-2 at 8.

2

agreement on behalf of the Government as borrower and State as guarantor. ECF No. 17-4 at 6. By virtue of the Addendum, the Bank increased the loan to $200 million. *Id.* at 3, § 3(a).

In total, the Bank disbursed $199.5 million to Eritrea. ECF No. 17-1 ¶ 9. The Government made two installments that equal approximately $45 million. *Id.* The Government has not made any payments on the loan since May 2012. *Id.*

In 2018, the Bank filed a claim for repayment in the United Kingdom's High Court of Justice, Business and Property Courts of England and Wales. *Id.* ¶ 10. Eritrea refused service and failed to appear. *Id.*; *see* ECF No. 17-5 at 20. In 2019, the English court entered summary judgment in the Bank's favor and awarded the Bank approximately $253.4 million in principal and interest and £70,000 in costs. ECF No. 17-1 ¶¶ 11–13; *see* ECF Nos. 17-5; 17-6. The court ordered the Bank to provide a copy of the judgment to Eritrea. ECF No. 17-6 ¶ 6. The court further ordered that, if Eritrea did not seek to vary or set aside the award after two months, the Bank could enforce the judgment. *Id.* ¶ 7. The Bank complied with the notice requirement. ECF Nos. 17-1 ¶¶ 14–15; 17-7. Eritrea has taken no action. ECF No. 17-1 ¶ 15.

On February 19, 2021, the Bank filed its Complaint in this Court. ECF No. 1. The Bank seeks to enforce the award pursuant to the Uniform Foreign-Country Money Judgments Recognition Act, D.C. Code §§ 15-361–15-371. ECF No. 1 ¶ 1. The Bank properly served Eritrea under 28 U.S.C. § 1608(a)(3). ECF Nos. 7; 8. On June 7, 2021, the Clerk entered default. ECF No. 11. On August 6, 2021, the Bank filed this Motion for Entry of Default Judgment. ECF No. 17. The Bank requests a judgment equal to the English judgment plus interest. *Id.*; ECF Nos. 19; 21.

**ANALYSIS**

The Bank argues that the Court may exercise subject matter jurisdiction under the FSIA's waiver exception. ECF No. 17 at 14 (citing 28 U.S.C. § 1605(a)(1)). The Bank argues that Section 11 of the loan agreement constitutes an explicit and implicit waiver because the Parties agreed to a choice of law and forum for the resolution of any disputes. *Id.* at 14–23. The Court need not reach the question, however, because the Bank has failed to satisfy a critical threshold element. Even assuming that Section 11 itself constitutes a waiver, the Bank has failed to show that Ahmad had authority to waive sovereign immunity on behalf of Eritrea.

**I.      Legal Standard**

After the Clerk enters a default, a plaintiff may apply to the court for a default judgment. Fed. R. Civ. P. 55(a)–(b). "[E]ntry of a default judgment is not automatic. . . ." *Mwani v. bin Laden*, 417 F.3d 1, 6 (D.C. Cir. 2005). The Court may enter a default judgment against a foreign sovereign when a plaintiff meets their burden to establish their claim with evidence "satisfactory to the court." 28 U.S.C. § 1608(e); *see generally Han Kim v. Democratic People's Republic of Korea*, 774 F.3d 1044, 1047–49 (D.C. Cir. 2014) (concluding plaintiff may meet burden under the FSIA with compelling, admissible evidence). Moreover, the Court has an independent obligation to determine jurisdiction. *See Borochov v. Islamic Republic of Iran*, 94 F.4th 1053, 1060 (D.C. Cir. 2024).

Under the FSIA, a foreign state is normally immune from suit. *See Verlinden B.V. v. Cent. Bank of Nigeria*, 461 U.S. 480, 488 (1983) (citing 28 U.S.C. § 1604). To exercise subject matter jurisdiction, the Court must determine that an exception to immunity applies. *See id.* at 493–94 & n.20; 28 U.S.C. §§ 1330(a), 1604. The plaintiff bears the burden to establish jurisdiction. *See Bell Helicopter Textron, Inc. v. Islamic Republic of Iran*, 734 F.3d 1175, 1183 (D.C. Cir. 2013).

The waiver exception applies when "the foreign state has waived its immunity either explicitly or by implication." 28 U.S.C. § 1605(a)(1). Courts narrowly construe this exception. *See World Wide Mins., Ltd. v. Republic of Kazakhstan*, 296 F.3d 1154, 1161–62, 1161 n.11 (D.C. Cir. 2002). An explicit waiver must be clear and unambiguous. *See id.* at 1162. For an implicit waiver to exist, there must be strong evidence of the foreign sovereign's intent to waive immunity. *See Creighton Ltd. v. Gov't of State of Qatar*, 181 F.3d 118, 122 (D.C. Cir. 1999).

A foreign sovereign may waive immunity through an agreement. *See, e.g.*, *World Wide Mins.*, 296 F.3d at 1162. The waiver, however, is effective only if the actor who signed the agreement had the authority to waive immunity on behalf of the sovereign. *See SACE S.p.A. v. Republic of Paraguay*, 243 F. Supp. 3d 21, 32 (D.D.C. 2017); *see also Oster v. Republic of South Africa*, 530 F. Supp. 2d 92, 100 (D.D.C. 2007), *aff'd sub nom. Oster v. Gov't of Republic of South Africa*, 298 F. App'x 6 (D.C. Cir. 2008) (unpublished). Otherwise, the waiver exception is inapplicable. *See CapitalKeys, LLC v. Democratic Republic of Congo*, No. 21-7070, 2022 WL 2902083, at *2 (D.C. Cir. July 22, 2022) (per curiam) (unpublished) (holding waiver exception inapplicable when Governor of the Central Bank of the Democratic Republic of Congo signed agreement without authority to enter into binding agreements on behalf of Central Bank); *cf. Belize Soc. Dev. Ltd. v. Gov't of Belize*, 794 F.3d 99, 102 (D.C. Cir. 2015) (stating contract signatory must have authority to enter into agreement under the arbitration exception, 28 U.S.C. § 1605(a)(6)). This Circuit has not decided whether an actor with apparent, but not actual, authority may waive sovereign immunity. *See CapitalKeys, LLC*, 2022 WL 2902083, at *4 (declining to "wade into the circuit split").

**II.    Discussion**

Although the Bank argues that the loan agreement contains a waiver, the Bank has failed to provide any evidence to support Ahmad's authority to bind Eritrea. ECF No. 17 at 14–23. Nor

5

has it shown that Ahmad could waive sovereign immunity on behalf of the country. Although the Bank assumes that Ahmad, by virtue of his position as ambassador, had the authority to waive sovereign immunity on behalf of Eritrea, that assumption is insufficient to constitute a clear waiver. *See generally id.*

*First*, it is unclear whether an ambassador has actual authority to waive immunity. Courts have traditionally assumed that an ambassador may present their country's position on diplomatic issues. *See Hourani v. Mirtchev*, 796 F.3d 1, 14 (D.C. Cir. 2015) (holding ambassador's statements constituted government action for purposes of act of state doctrine). This Circuit has not addressed, however, whether an ambassador has the authority as a matter of law to enter into commercial contracts with third parties and waive sovereign immunity. The Bank has failed to address this issue.

*Second*, it is unclear whether Ahmad had actual or apparent authority to waive immunity in the loan agreement. The Bank has failed to present any evidence on Ahmad's position. The Bank offers no explanation about the meaning of Ahmad's "authorization" from the Eritrean President. ECF No. 17-2 at 2, 8; *see, e.g.*, *TJGEM v. Republic of Ghana*, 26 F. Supp. 3d 1, 9–10 (D.D.C. 2013) (citing declarations about Ghanian law and finding that Minister of Finance lacked actual authority to enter into contract that contained a waiver of Ghana's immunity under commercial activity exception). Nor has the Bank made clear that the *President* had authority to waive Eritrea's immunity. Regardless of whether actual or apparent authority is necessary, the Bank has fallen short of meeting its burden to show that Ahmad had any authority. In so doing, the Bank has failed to produce satisfactory evidence that the waiver exception applies. *See* 28 U.S.C. § 1608(e).

Because the Court must narrowly construe the waiver exception, default judgment against Eritrea is inappropriate. That said, the Court recommends that the Bank have the opportunity to refile its Motion should it wish to introduce additional evidence in an attempt to meet its burden.

## CONCLUSION

For the foregoing reasons, this Court recommends that the Bank's Motion for Default Judgment be **DENIED WITHOUT PREJUDICE**.

**SO ORDERED**.

Date:  May 14, 2025

_____
MOXILA A. UPADHYAYA
UNITED STATES MAGISTRATE JUDGE

**Local Civil Rule 72.3(b) Notice**

The Parties are hereby advised that under Local Civil Rule 72.3(b), any party who objects to the proposed findings or recommendations herein must file written objections within fourteen days of being served with a copy of the Report and Recommendation. Objections must specifically identify the portion of the recommendation to which the objection pertains and the basis for the objection. The Parties are further advised that they may waive their right of appeal from an order of the District Court adopting such findings and recommendations if the Parties fail to file timely objections to the findings and recommendation set forth in this Report and Recommendation. *See Thomas v. Arn*, 474 U.S. 140, 142 (1985).

\* \* \*